# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2905 | **DATE** | 4/23/2003 |
| **CASE TITLE** | Boim et al. vs. Quranic Literacy et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiffs' petition for Attorneys' Fees [#160] is **granted in part and denied in part.** The Court awards Plaintiff $7,694.50 in fees and costs. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 12 | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | APR 2 4 2003 | | |
| | Notified counsel by telephone. | | date docketed | | 184 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 4/23/2003 | | |

FT/ *Dery*  courtroom deputy's initials

date mailed notice

FT mailing deputy initials

Date/time received in central Clerk's Office

APR 2 4 2003

STANLEY BOIM, Individually, and )
as Administrator of the Estate of )
DAVID BOIM, Deceased, and JOYCE )
BOIM, )
 )
 )      Civil No. 00 C 2905
          Plaintiffs, )
 )      Judge Arlander Keys
   vs. )
 )
QURANIC LITERACY INSTITUTE, et al. )
 )
          Defendants. )
 )

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiffs' Petition for
Attorneys' Fees.  Plaintiffs ask the Court to enforce Judge
George Lindberg's January 10, 2001 Memorandum Opinion and Order,
which granted them the attorneys' fees and costs incurred in
defending against Defendants' "motions".  For the reasons set
forth below, Plaintiffs' Petition is granted in part and denied
in part.

## BACKGROUND FACTS

Plaintiffs are the parents of Daniel Boim, a Unites States
citizen who was murdered in Israel by two Hamas terrorists on May
13, 1996.  Plaintiffs describe Hamas as an extremist Palestinian
militant organization that is divided into two branches, one
political and one military.  One of the terrorists responsible
for Daniel Boim's death later died in a suicide bombing; the

other was tried and convicted of his murder, and is presently incarcerated.

Plaintiffs brought this civil action against these two Hamas terrorists, and against various organizations and individuals with alleged financial and other ties to Hamas. Plaintiffs advanced three theories of liability against the organizational and "other individual" Defendants. First, Plaintiffs asserted that Defendants' acts of giving money to a group, which then sponsored terrorist acts, constituted international terrorism, pursuant to 18 U.S.C.A. §§ 2331, 2333 (West 2002). Next, Plaintiffs alleged that, because these Defendants provided material support to terrorists, which is illegal under 18 U.S.C. §§ 2339A and 2339B, they are civilly liable under 18 U.S.C. § 2333. Finally, Plaintiffs argued that these Defendants were aiders and abetters of international terrorism.

Defendants filed multiple Motions to Dismiss, as well as Motions for Sanctions against Plaintiffs for filing what Defendants characterized as a legally baseless Complaint. Plaintiffs responded that their theories for civil liability were valid, and that Defendants' Sanctions Motions were so inappropriate as to warrant the imposition of sanctions against Defendants.

On January 10, 2001, Judge Lindberg issued a 37 page Memorandum Opinion and Order, denying Defendants' Motions to

Dismiss and Motions for Sanctions. *Boim v. Quranic Literacy Institute,* 127 F. Supp.2d 1002, 1013-14 (N.D. Ill. 2001). In his decision, Judge Lindberg rejected Plaintiffs' first theory of liability[1], finding that "[c]ontributions to a foreign organization . . . without a further allegation of participation by the contributor, appear too far removed to constitute direct acts of international terrorism." *Id.* Judge Lindberg also rejected Plaintiffs' second theory of liability, finding that the alleged violations of §§ 2339A and 2339B could not form the basis for civil liability, because they were enacted after Defendants had allegedly funneled contributions to Hamas. Plaintiffs' third theory of liability, however, was sufficient to carry the day. Acknowledging that Plaintiffs' "aider and abetter" theory presented a question of first impression, Judge Lindberg found that liability could exist under such a theory and denied Defendants' Motions to Dismiss on that basis.

In the Conclusion section of the Memorandum Opinion and Order (the "Opinion"), Judge Lindberg denied Defendants' Motions to Dismiss. He also denied Defendants' Rule 11 Motions for Sanctions, and awarded Plaintiffs their fees and costs "related to the preparation of the response to those motions." *Id.* at

---

[1] Because Plaintiffs alleged that Defendant Salah participated in the recruiting and training of terrorists, in addition to channeling funds to Hamas, Plaintiffs' claim against him were allowed to stand.

3

1021. Notably, the Minute Order entering the judgment, which also
was issued on January 10, 2001, references only the court's
denial of Defendants' Motions to Dismiss and denial of
Defendants' Motions for Sanctions.  The Minute Order does not
mention the court's decision to award Plaintiffs their attorneys'
fees and costs.

Judge Lindberg granted Defendants[2]' Motion for a Certificate
of Appealability, and the Seventh Circuit subsequently granted
Defendants leave to file an interlocutory appeal, pursuant to 28
U.S.C. § 1292(b) (West 2003). *Boim v. Quranic Literacy Inst. &
Holy Land Found.,* 291 F.3d 1000 (7th Cir. 2002).  On June 5,
2002, the Seventh Circuit affirmed the district court's decision
denying Defendants' Motions to Dismiss and Defendants' Motions
for Sanctions.  *Id.*  Notably, Defendants did not appeal Judge
Lindberg's imposition of fees and costs against them.

On January 8, 2003, Plaintiffs filed a Petition to Enforce
Judge Lindberg's Sanctions Award, seeking almost $58,000 in fees
and costs.

### DISCUSSION

In their Petition, Plaintiffs urge that this Court interpret
Judge Lindberg's fee award as granting Plaintiffs the fees and
costs that they incurred in opposing not only the Motions for

---

[2] Defendants Quranic Literacy Institute and Holy Land
Foundation For Relief and Development were the appealing
Defendants.

4

Sanctions, but also the Motions to Dismiss. Defendants argue that Plaintiffs' Petition should be denied, because: 1) neither Plaintiffs' initial request for sanctions, nor Judge Lindberg's award of fees comported with Rule 11's requirements; 2) Defendants and their counsel did not violate Rule 11; and 3) even if sanctions are appropriate, Plaintiffs' request for almost $58,000 is grossly excessive. Plaintiffs reply that Defendants should have raised these arguments on appeal; and that, having failed to do so, Judge Lindberg's fee award is the law of the case and this Court does not have the authority to revisit that determination.

This Court granted Defendants leave to file a Sur-reply, to address Plaintiffs' contention that Defendants' arguments come too late. Defendants assert that Judge Lindberg's fee award was not appealed, because it *could not* be appealed. Defendants assert that Judge Lindberg's fee award could not be appealed because: 1) it was not set out on a separate document, as required by Fed. R. Civ. P. 58; 2) it did not specify the amount of the fees to be paid; 3) it did not identify who was responsible for paying the fees; and 4) it did not identify who was to receive the sanction. Therefore, the fee award was not a final and appealable order.

At the heart of the parties' dispute – and perhaps confusion --is the nature of the order granting Plaintiffs their attorneys' fees and costs. Because this Court finds that Judge Lindberg's

Order merely awarded Plaintiffs their fees and costs for successfully opposing Defendants' Motion for Sanctions, and did not grant Plaintiffs sanctions, Defendants' attack on the award as failing to comply with Rule 11 is without merit.

## A. Requirements for Requesting and Imposing Rule 11 Sanctions

Defendants attempt to avoid the fee award by characterizing it as procedurally defective. Defendants' argument, however, relies on the faulty premise that the fees could only be awarded pursuant to a Rule 11 Motion filed by Plaintiffs.

Rule 11 permits courts to sanction attorneys and/or their clients for: 1) filing papers for improper purposes; 2) making claims or defenses unwarranted by existing law or making frivolous arguments to extend, modify, or reverse the law; 3) making factual allegations that lack (or are likely to lack) evidentiary support; and 4) making unwarranted denials of factual contentions. Fed. R. Civ. P. 11(b)(1)-(4). In 1993, Congress substantially revised Rule 11 to require (among other things) attorneys seeking sanctions to notify the offending party 21 days before filing a sanctions motion. Fed. R. Civ. P. 11(c)(1)(A); *Northlake Marketing & Supply, Inc. v. Glaverbel, S.A.,* 194 F.R.D. 633, 634 (N.D. Ill. 2000) (noting that this "safe harbor provision" provides an offending lawyer with 21 days to withdraw a sanctionable pleading or paper, giving the attorney "one free bite.")

The 1993 Amendments to Rule 11 also restricted the court's ability to impose monetary sanctions. The Advisory Notes explain that monetary sanctions "should ordinarily be paid into the court as a penalty," but provides that, in some circumstances, "particularly for (b)(1) (improper purpose) violations," the court may permit the payment of monetary sanctions to a party "*if requested in a motion* and if so warranted." As such, a court cannot award monetary sanctions to a party on its own initiative. While a court is still permitted to issue nonmonetary sanctions on its own initiative, the court must first provide the attorney or party with the opportunity to show cause why they have not violated the Rule. Fed. R. Civ. P. 11(c)(1)(B). In addition, Rule 11 now requires courts to "describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed." Fed. R. Civ. P. 11(c)(2)(B).

Defendants argue that Plaintiffs' sanction request failed to comport with the 21 day safe harbor provision, and was improperly included within Plaintiffs' Response to Defendants' Sanctions Motions, instead of being filed as a separate pleading. Defendants also complain that Judge Lindberg's ruling neither described the conduct that resulted in the violation, nor explained the basis for the sanction imposed. Defendants further assert that Judge Lindberg's failure to identify which Defendants were liable to pay what amount and to whom renders his sanctions

ruling ineffectual.

If Judge Lindberg's authority to award attorneys' fees and costs to Plaintiffs under Rule 11 were limited to granting a properly presented Rule 11 Sanctions Motion, the Court would find merit to Defendants' arguments. But Judge Lindberg's authority is not so limited. Rule 11 also authorizes courts to award "to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting *or opposing* the motion." Fed. R. Civ. P. 11(c)(1)(A). Compliance with the safe harbor provision is not required when a party merely receives attorneys' fees and costs for successfully defending against a Motion for Sanctions. *Jawbone, LLC, v. Donohue,* NO. 01 C 8066(CSH), NO. 2002 WL 1424587, at *8 (S.D.N.Y. June 28, 2002). "'[S]ervice of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11 - whether the movant or the target of the motion- reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion.'" *Id. quoting* Advisory Committee Note to 1993 Amendments.

Defendants' arguments would be relevant, indeed persuasive, if Judge Lindberg had granted Plaintiffs their attorneys' fees pursuant to their own successful Motion for Sanctions. Instead, he simply awarded Plaintiffs the fees and costs for successfully defending against Defendants' Motions for Sanctions, as he is

authorized to do under Rule 11(c)(1)(A). As such, neither Plaintiffs nor Judge Lindberg are required to comply with Rule 11's rules with regard to filing or granting a Motion for Sanctions. Therefore, Defendants' argument is rejected.

## B. The Finality of Judge Lindberg's Sanctions Order

Plaintiffs attack, as misplaced, Defendants' arguments in opposition to their Fee Petition, claiming that these arguments should have been raised on appeal. Defendants respond that it was not possible for them to challenge the validity of the award on appeal, because it was not a final and appealable order under the Federal Rules of Civil Procedure.

Rule 58 of the Federal Rules of Civil Procedure provides that a judgment is not effective until it is set forth on a separate document and entered on the district court's civil docket. *See TMF Tool Co., Inc. v. Muller,* 913 F.2d 1185, 1188-89 (7th Cir. 1990). As a general rule[3], a final and appealable order

---

[3] The Seventh Circuit has recognized an exception to the general rule, which requires compliance with Rule 58, stating that:

> Where . . . the district court clearly intended that the opinion and order from which an appeal was taken would represent the final decision in the case, a judgment of dismissal was entered in the clerk's docket, and the prevailing party in the district court did not object to the taking of an appeal in the absence of a separate judgment, the separate judgment requirement of Rule 58 may be deemed waived."

*Rosser v. Chrysler Corp.,* 864 F.2d 1299 (7th Cir. 1989). *See also Adams v. Lever Bros. Co.,* 874 F.2d 393, 394 (7th Cir. 1989) ("when nothing remains to be decided in the district court, the

does not exist until Rule 58's requirements are satisfied. *Id.;*
*United States v. Indrelunas,* 411 U.S. 216, 221 (1973) (where
prior docket entry reflected only liability, and the order was
not recorded on a separate document, no final decision, for
purposes of appeal, existed.) The Seventh Circuit has stated
that Rule 58's separate document requirement applies to an award
of attorneys' fees. *Miller v. Artistic Cleaners,* 153 F.3d 781,
783 (7th Cir. 1998) (requiring that a judgment for an award of
attorney's fees be set forth in a separate document, pursuant to
Rules 58 and 54(d)(2)(C).)

Defendants assert that Judge Lindberg's fee award was not
recorded on a separate document, and was not entered on the
court's civil docket. Instead, Judge Lindberg issued a Minute
Order, recording only his decision to deny Defendants' Motions to
Dismiss and to deny Defendants' Motions for Sanctions.

Defendants are technically correct that there is no separate
document recording the award of attorneys' fees in this case.
However, Judge Lindberg awarded Plaintiffs their attorneys' fees

---

order is appealable even if formalities have not been observed.")
Obviously, the fact that Defendants' Motions to Dismiss were
denied indicates that Judge Lindberg's Memorandum Opinion and
Order (the "Opinion") was not the final decision in the case.
But even looking at the sanctions issue as a case in and of
itself, it is apparent that the Opinion was not intended to be
the final determination with respect to sanctions. The Opinion
did not specify the amount to be paid, or expressly identify who
would be responsible for paying the sanctions.

for successfully defending against Defendants' Motions for
Sanctions, as is provided for under Rule 11. The award is,
therefore, part and parcel of the ruling on Defendants' Sanctions
Motion; it was not a sanctions award imposed under a separate
statute authorizing a recovery of attorney's fees (such as 42
U.S.C § 1988) or pursuant to an independent sanctions motion
filed by Plaintiffs. Under these circumstances, the Court finds
that the January 10, 2001 Minute Order, which records the court's
denial of Defendants' Motions for Sanctions, satisfies Rule 58's
"separate document" requirement with respect to the fees awarded
to Plaintiffs.

However, the fact that neither Judge Lindberg's Opinion nor
the Order specified the amount of fees being awarded does
generally indicate that the attorneys' fee award was not final
and appealable. *Kokomo Tube Co v. Dayton Equipment Serv. Co.,*
123 F.3d 616, 621 (7th Cir. 1997). The Seventh Circuit
recognizes an exception to this rule, if the order awarding fees
is reviewed in conjunction with a final judgment on the merits.
*Id.* (citing *Bittner v. Sadoff & Rudoy Indust.,* 728 F.2d 820, 826-
27 (7th Cir. 1984). In these circumstances, the appellate court
may allow an indefinite fee award to be appealed, because "'a
court of appeals may, in the interest of orderly judicial
administration, review matters beyond that which supplies
appellate jurisdiction.;" *Bittner,* 728 F.2d at 826 (quoting

11

*Scarlett v. Seaboard Coast Line R*, 676 F.2d 1043, 1052 (5th Cir. 1982).

Given the procedural posture of this case, as presented on appeal, the Court finds that the *Bittner* exception does not apply. The Seventh Circuit's review of Judge Lindberg's ruling on the Motions to Dismiss was interlocutory and was not a review of the merits of the suit. Under these circumstances, the Court finds that there was no final appealable order with respect to the award of attorneys' fees in this case.

## C.  The Scope of the Fee Award

In denying Defendants' Motions and awarding Plaintiffs their attorneys' fees and costs, Judge Lindberg stated, as follows:

> For the foregoing reasons, the court finds that plaintiffs have adequately pleaded a cause of action against the defendants under 18 U.S.C. § 2333. It therefore denies defendant's motions to dismiss in their entirety. In addition, it denies defendants' Rule 11 motions for sanctions against plaintiffs for filing the complaint, and awards plaintiff fees and costs related to the preparation of the response to those motions.

*Boim v. Quranic Literacy Instit., et al,* 127 F. Supp.2d 1002, 1021 (N.D. Ill. 2001). Plaintiffs interpret this passage as permitting Plaintiffs to collect fees for defending against both the Motions to Dismiss and the Motions for Sanctions. Viewed in a vacuum, the Court agrees that this paragraph could support such an interpretation. But viewing the events leading up to the award, and in light of the authority supporting Judge Lindberg's

12

Order, this Court finds that a far more restrictive interpretation is appropriate.

First, Judge Lindberg found Defendants' Motions to Dismiss to be, largely, persuasive. He agreed with Defendants that two of the three theories of liability advanced by Plaintiffs were lacking in merit. Judge Lindberg denied the Motions on the basis that Plaintiffs' third basis of liability presented a novel issue of first impression. Under these circumstances, it is highly unlikely that Judge Lindberg would have awarded Plaintiffs their fees and costs incurred in opposing Defendants' Motions to Dismiss.

The novelty of Plaintiffs' claims militates against sanctioning Defendants for filing their Motions to Dismiss for yet another reason. Rule 11 sanctions are generally inappropriate when dealing with issues of first impression. *Hrubec v. National Railroad Passenger Corp.,* 829 F. Supp. 1502, 1507 (N.D. Ill. 1993). Plaintiffs' own Response to Defendants' Motions to Dismiss is replete with citations to caselaw holding that novel legal arguments do not provide an appropriate basis for Rule 11 sanctions. *See* Pls. Resp. Mtn. Dismiss at p. 10. It is difficult to imagine that Judge Lindberg would have imposed sanctions upon Defendants for raising legal challenges that "no appellate court had considered, much less rejected." *Milwaukee Concrete Studios v. Field Mfg. Co.,* 8 F.3d 441, 449 (7th Cir.

1993).

Finally, and perhaps most importantly, the subsection of Rule 11 that forms the basis for Judge Lindberg's ruling permits the prevailing party to collect only fees incurred in either presenting or opposing the Rule 11 Motion. Fed. R. Civ. P. 11 (c)(1)(A). It would have been beyond Judge Lindberg's authority, under this subsection of Rule 11, to award Plaintiffs their attorneys' fees in defending against the Motions to Dismiss.

If, instead of awarding the fees pursuant to Fed. R. Civ. P. 11(c)(1)(A), Judge Lindberg had awarded Plaintiffs their attorneys' fees as a sanction for conduct in violation of Rule 11 (b), such a sanction could have feasibly included attorneys' fees incurred in defense of both the Motions to Dismiss and the Motions for Sanctions. However, as discussed above, such a ruling would have been procedurally defective and could not stand[4]. Plaintiffs are well aware of this, arguing in their briefs in support of their Fee Petition that Judge Lindberg awarded the fees to Plaintiffs pursuant to Rule 11(c)(1)(A), which limits the fees to those incurred in defending against the sanctions motion. Plaintiffs make a weak effort to avoid this obvious inconsistency in their positions – ie., arguing that the fees were awarded under Rule 11(c)(1)(A) to overcome Defendants'

---

[4] Specifically, because Plaintiffs failed to comply with the safe harbor provision and Judge Lindberg's order otherwise would have failed to comply with Rule 11 and Rule 58.

14

procedural defect arguments, and then ignoring the terms of Rule 11(c)(1)(A) to advance an expansive interpretation of Judge Lindberg's ruling - by claiming that their case was exceptional due to the interrelatedness between the Motions to Dismiss and the Motions for Sanctions.

Considering the foregoing, the only reasonable interpretation of Judge Lindberg's ruling is to award Plaintiffs their reasonable fees and costs incurred in opposing Defendants' Sanctions Motions. Such relief is specifically tailored to redress the wrongful conduct and is specifically authorized by Rule 11.

## D. The Amount of Fees

Plaintiffs seek to recover $57,988.50 in fees and costs incurred defending against both the Motions to Dismiss and the Motions for Sanctions. Even setting aside the hours requested for opposing the Motions to Dismiss, the Court agrees that Plaintiffs' request is excessive.

Plaintiffs' arguments in support of their fees are also offensive. Specifically, Plaintiffs argue that it is "obscene" for Defendants to challenge their entitlement to almost $58,000 in fees, because Defendants are under investigation for terrorism. The Court fails to see the legal connection. In addition, Plaintiffs contend that they are somehow entitled to these excessive fees because they are "extremely modest" in

comparison to the Nation's war against international terrorism (among other things).  And, just for good measure, Plaintiffs note that their Complaint and the Motions were filed in advance of the terrorist attacks on September 11, 2001.  Plaintiffs' inflammatory rhetoric has no bearing on the legal sufficiency of their Fee Petition.

Turning to Plaintiffs' Fee Petition, the Court has disregarded all entries detailing work related to opposing the Motions to Dismiss, and considers only those entries specifying work performed in opposing the Motions for Sanctions.   The following standards guide the Court's fee determination.

In *Hensley v. Eckerhart,* the United States Supreme Court set forth the standard for courts to employ when reviewing fee petitions.   461 U.S. 424, 433-35 (1983).  The Court explained that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly wage."  *Id.* at 433. (labeling this equation the lodestar method.)   Defendants do not challenge the hourly rate sought by Plaintiffs' counsel or paralegals[5].

---

[5]  An attorney's reasonable rate is the rate the attorney commands in the market, or the market rate.  *People Who Care v. Rockford Board of Education School Dist. No. 205,* 90 F.3d 1307, 1310 (7th Cir. 1996). (the burden is on fee applicant to establish market rate.)   "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate."  *Id.*  Additional evidence of market rate includes

16

The Court will award only those fees for time that is properly documented and reasonably expended. A court may find that fees are unreasonable if the attorney was inefficient and duplicitous, or inadequately documented his/her time. *People Who Care,* 90 F.3d at 1314. The Court may not, however, "'eyeball' the fee request and 'cut it down by an arbitrary percentage because it seemed excessive to the court.'" *Id.*(quoting *Spellan v. Bd. of Educ. for Dist. 111,* 59 F.3d 642, 647 (7th Cir. 1995)).

Where the documentation of hours is inadequate, or the description of services is vague, the Court may reduce or deny the award accordingly. *Webb v. James*, 967 F. Supp. 320, 323 (N.D. Ill. 1997). The party opposing a fee petition has a similar obligation; "[c]ounsel who opposed the fees have a similar responsibility to state objections with particularity and clarity." *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 776 F.2d 646, 664 (7th Cir. 1985). "If a defendant fails to specifically object to the requested attorneys' fees, the Court will generally

---

fees awarded to the attorney in similar cases, or "affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work." *Spegon v. The Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999). "Once an attorney provides evidence of his billing rate, the burden is upon the defendant to *present evidence* establishing 'a good reason why a lower rate is essential.'" *People Who Care v. Rockford Board of Education School Dist. No. 205,* 90 F.3d 1307,1313 (7th Cir. 1996) (emphasis added) (quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993)). Plaintiffs have satisfied their burden of establishing their market rate by presenting uncontested affidavits.

17

award the requested fees." *Northwestern Nat.'l Life Ins. Co. of Milwaukee Wis. v. Lutz,* 933 F. Supp. 730, 732 (C.D. Ill. 1996).

A repeated problem with counsel's time entries is their decision to "block bill." Block billing is inappropriate and prevents both opposing counsel and the Court from assessing the reasonableness of the time expended on certain tasks. *Reyes v. Nations Title Agency of Illinois, Inc.,* No. 00 C 7763, 2001 WL 687451, at *2 (N.D. Ill. June 19, 2001).

A review of Plaintiffs' Fee Petition indicates that attorney Thomas Carr billed 5 hours on September 20, 2000 to read and analyze both Defendants' Motions to Dismiss and Defendants' Motions for Sanctions. The Motions to Dismiss are clearly more voluminous and present more complex issues than the Motions for Sanctions. Therefore, the Court reduces the entry by 60% to account for the non-recoverable time devoted to opposing the Motions to Dismiss. The Court awards Plaintiffs fees equal to 2 hours for Thomas Carr's time.

Attorney Jodi Kris billed 14.50 hours on October 2 and 3, 2000, for reviewing and revising unidentified briefs, as well as performing other tasks that may or may not have been related to opposing the Motions for Sanctions. The Court first reduces the requested entry by 20% for block billing and for an inadequate description of these other tasks. The Court further reduces the entry by 60% to account for the remaining time which was,

18

presumably, devoted to the more voluminous Motions to Dismiss. The Court awards Plaintiffs fees equal to 4.64 hours of Jodi Kris' time.

Attorney Mark Miller billed 56 hours for researching, reviewing and drafting Plaintiffs' opposition to sanctions. Although the Court is not inclined to play armchair quarterback, 56 hours is excessive for even a complex response to a motion for sanctions. The Court reduces Mr. Miller's hours by 1/3rd, and awards Plaintiffs 37 hours for Mr. Miller's work.

Finally, paralegal Molly Parsons billed 7.20 hours for cite checking Plaintiffs' Motion in Opposition to the Rule 11 Sanctions. The Court presumes that Ms. Parsons performed the cite check without the benefit of legal software (a recoverable expense), which would have completed the task in a matter of minutes. Nevertheless, 7.20 is an excessive amount of time even for cite checks performed manually, and the Court reduces the entry by 1/3rd, awarding Plaintiffs 4.8 hours for Ms. Parson's time. Ms. Parsons also billed an additional 1.0 hour conferring with Mr. Miller about the cite check, and for copying and distributing the case docket. These latter tasks are not compensable legal tasks, and the Court awards Plaintiffs .5 hours for Ms. Parson's time conferring with Mr. Miller.

Therefore, the Court awards Plaintiffs $7,694.50 in attorneys fees and costs incurred in defending against

Defendants' Motions for Sanctions. Defense counsel argues that they, not their clients, are liable for paying the awarded attorneys' fees, pursuant to Rule 11(c)(2)(A) (shielding clients whose attorneys are primarily responsible for asserting legally unwarranted claims.) The Court disagrees, as the fees were awarded to Plaintiffs as prevailing parties, and not against Defendants for violating Rule 11. Therefore, the Court orders all of the Defendants who filed Sanctions Motions, and their counsel, to satisfy, jointly and severally, the total award of $7,694.50. Defense counsel are free to shoulder their clients' share of this burden, but the Court will not order them to do so.

## CONCLUSION

For the reasons set forth above, the Court awards Plaintiff $7,694.50 in fees and costs.

**IT IS HEREBY ORDERED** that Plaintiffs' Petition for Attorney's Fees be, and the same hereby is, **GRANTED in part** and **DENIED in part**.

Dated:  April 23, 2003        E N T E R:


ARLANDER KEYS
Unites States Magistrate Judge

20