# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2905 | **DATE** | 2/9/2004 |
| **CASE TITLE** | Stanley Boim et al. vs. Quranic Literacy Institute et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiffs' motion to compel the deposition of Mohammed Salah [#237] is hereby **denied**; however, Mr. Salah's answer to the amended complaint, including the affirmative defenses asserted therein, is stricken. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | 12 |
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | FEB 0 9 2004 |
| | Notified counsel by telephone. | | date docketed |
| | Docketing to mail notices. | | docketing deputy initials |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | 2/9/2004 |
| FT/*puu* | courtroom deputy's initials | U.S. DISTRICT COURT CLERK | date mailed notice |
| | | 08:1 Hd 5- 83+ 40 | FT |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number 248

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STANLEY BOIM, Individually and as )
Administrator of the Estate of )
DAVID BOIM, deceased, and JOYCE )
BOIM, )
 )
 ) No. 00 C 2905
            Plaintiffs, )
 )
       v. )
 ) Magistrate Judge
QURANIC LITERACY INSTITUTE, et al.,) Arlander Keys
 )
            Defendants. )

FEB 0 9 2004

**MEMORANDUM OPINION AND ORDER**

On May 13, 1996, David Boim was killed in a terrorist attack
while waiting for a bus in Israel. His parents, both Israeli
citizens and United States nationals, sued the attackers, as well
as various individuals and organizations who they allege funded
and otherwise supported the attack. One of the organizations
they sued was the Quranic Literacy Institute (QLI). According to
the complaint, QLI purports to translate and publish sacred
Islamic texts, but, in reality, it raises and launders money for
the terrorist group Hamas. See Complaint, ¶5. The Complaint
also names Mohammed Abdul Hamid Khalil Salah, who, according to
the Complaint, was nominally employed by QLI as a computer
analyst. Id. In their Complaint, the Boims allege that Mr.
Salah is the admitted U.S.-based leader of the military branch of
Hamas; he is named on the list of Specifically Designated
Terrorists compiled by the U.S. Treasury Department's Office of

Foreign Assets Control. *Id.,* ¶11.

In the first year or so after the Boims filed their Complaint, Mr. Salah actively participated in the case; in December of 2000, he responded to document requests and interrogatories, and, on January 16, 2001, he filed an Answer to the Complaint. In his Answer, he admitted that he performed data entry and other related computer services for QLI, admitted that he had been prosecuted by the Israeli government for channeling money to Hamas, admitted that he had been jailed in Israel from January 1993 to November 1997, and admitted that his name appears on the list of terrorists. *See* Answer, ¶¶5, 11. Mr. Salah denied that he is the admitted U.S.-based leader of the military branch of Hamas, and he denied that he ever channeled money to Hamas. *Id.,* ¶11.

Mr. Salah's participation in the case came to a halt on April 1, 2003, when the Boims attempted to take his deposition. After answering questions about his full name, his address, his marital status, his educational background and his current occupation, Mr. Salah declined to answer any further questions, invoking his Fifth Amendment right not to incriminate himself.

On August 4, 2003, the Boims filed an Amended Complaint. At least with respect to Mr. Salah, the allegations of the Amended Complaint are substantively the same as the allegations of the original Complaint. Despite his assertion of the Fifth Amendment

2

at his deposition, on October 24, 2003, Mr. Salah answered the
Amended Complaint; his Amended Answer is substantively the same
as his original Answer, though it adds several affirmative
defenses.  At no point in either his original Answer or his
Amended Answer did Mr. Salah refuse to answer on the basis of the
Fifth Amendment; nor did he raise any Fifth Amendment objections
in his responses to the Boims' written discovery requests.

On November 21, 2003, the Boims moved to compel Mr. Salah to
answer the questions asked at his April 1, 2003 deposition.  The
Boims argue that, by otherwise participating in the case, Mr.
Salah has waived his right to hide behind the Fifth Amendment.
Not surprisingly, Mr. Salah disagrees.

"[T]he Fifth Amendment 'not only protects [an] individual
against being involuntarily called as a witness against himself
in a criminal prosecution but also privileges him not to answer
official questions put to him in any other proceeding, civil or
criminal, formal or informal, where the answers might incriminate
him in future criminal proceedings.'"  *Baxter v. Palmigiano*, 425
U.S. 308, 316 (1976)(quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77
(1973)).  The Boims do not challenge the basis for Mr. Salah's
assertion of the privilege; they apparently concede that the
questions they asked of him could very well have required him to
incriminate himself.  They argue, however, that by answering the
Complaint and the Amended Complaint, and by responding to their

3

written discovery requests, he waived the right to assert the privilege at his deposition. Without question, the rights granted by the Fifth Amendment may be waived. But waiver "is not to be lightly inferred." *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir. 1981). Indeed, "courts must 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" *Emspak v. U.S.*, 349 U.S. 190, 198 (1955)(citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Glasser v. United States*, 315 U.S. 60, 70 (1942); *Smith v. United States,* 337 U.S. 137, 150 (1949)).

The question of whether the privilege has been waived in any given case depends upon the particular facts and circumstances surrounding that case. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). *See also Colorado v. Spring*, 479 U.S. 564, 573 (1987); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). In some cases – those presenting "the most compelling of circumstances," where, for example, the person asserting the privilege has abused the process or otherwise conducted himself in a way that is likely to create a significant danger of distortion of the facts – a waiver of the privilege against self- incrimination will be inferred from a witness' prior statements on the subject matter of the case. *See Klein*, 667 F.2d at 287 (citing *Rogers v. United States*, 340 U.S. 367 (1951)). Certainly, "where criminating facts have been voluntarily revealed, the privilege cannot be

4

invoked to avoid disclosure of the details." *Rogers*, 340 U.S. at 373.

In this case, two key facts counsel against a waiver finding. First, nothing in the record suggests that Mr. Salah is attempting to use the Fifth Amendment as both a sword and a shield, that he is somehow abusing the privilege to disclose criminating facts, while withholding the details in order to create a distorted version of the truth. It is true that Mr. Salah behaved in a manner that, at first blush, appears to be inconsistent with his assertion of the privilege, actively participating in the case at one point and then shutting down discovery by invoking the Fifth Amendment at his deposition. But, when viewed in the context of what was going on in the world, and in this case, his assertion of the privilege in 2003 seems quite reasonable, whereas, in 2000, it may not have. As an initial matter, given the nature of this case and the allegations of terrorism and terrorist ties that are central to the Boims' complaint, one can reasonably conclude that the September 11, 2001 attacks on the World Trade Center, and the attendant changes in the Justice Department's policies concerning such issues, could have impacted Mr. Salah's self-incrimination analysis. More importantly, between the time he answered the initial complaint and responded to discovery, and the time he sat for his deposition, Mr. Salah had been advised that the government had

5

initiated an active grand jury investigation of his activities and that he is a target of the investigation. *See* Affidavit of Mary Rowland, ¶¶2-3 (attached as Exhibit A to Mr. Salah's Response Regarding his Fifth Amendment Rights). These events - hardly foreseeable in December 2000 and January 2001, when Mr. Salah answered discovery and answered the Complaint - justify any inconsistencies in Mr. Salah's behavior, and persuade the Court that Mr. Salah legitimately asserted his Fifth Amendment rights. Accordingly, the Court rejects the Boims' argument that Mr. Salah's 2000 and 2001 conduct justifies compelling him to answer deposition questions.[1]

Second, although it is true that Mr. Salah answered the Amended Complaint - without invoking his Fifth Amendment rights - after the attacks on the World Trade Center and after learning that he was the subject of a government investigation, his amended answer simply parrots his initial answer. Accordingly, the Court rejects the Boims' argument that his amended answer amounts to a waiver of the privilege. Indeed, if Mr. Salah had invoked the privilege in answering the Amended Complaint, despite having already answered the very same allegations, the plaintiffs

---

[1]The impact of this decision is likely to be tempered somewhat over time. As Mr. Salah is no doubt aware, because this is a civil case, the Fifth Amendment does not shield him from adverse inferences that may be drawn against him based upon his refusal to answer the deposition questions asked of him. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

would no doubt have claimed that he was abusing the privilege by doing so.

Nevertheless, the Court is mindful that Mr. Salah's assertion of the privilege prevented the Boims from exploring the statements Mr. Salah made in his Amended Answer. For example, in his Amended Answer, Mr. Salah stated that he worked for QLI, on a volunteer basis, for a period of time in the past; he stated that he merely performed data entry and other related computer services. *See* Answer to Amended Complaint, ¶¶5. But he refused to answer questions posed at his deposition about the specifics of his work at QLI or about his supposed "volunteer" status. Given his refusal to answer questions at his deposition, it would be unfair to permit his substantive responses to the allegations of the Amended Complaint to stand; similarly, it would be unfair to the Boims to allow Mr. Salah to assert affirmative defenses, but refuse to engage in discovery concerning those defenses. Accordingly, although the Court will not infer a waiver of the privilege, it will strike Mr. Salah's answer and affirmative defenses to ensure that the Boims' are not prejudiced by Mr. Salah's relatively late assertion of the privilege.

## CONCLUSION

Based upon the facts and circumstances of this case, the Court finds that Mr. Salah has not waived his Fifth Amendment rights. His assertion of the privilege against self-

incrimination at his deposition was valid, and the Court will not
compel him to answer the questions asked of him.  The Court,
therefore, denies the Boims' motion to compel, but grants the
motion to strike Mr. Salah's Amended Answer, including the
Affirmative Defenses asserted therein.


Date: February 9, 2004


                    ENTER:



                    _____
                    ARLANDER KEYS
                    United States Magistrate Judge

8