Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2905 | **DATE** | 11/24/2004 |
| **CASE TITLE** | Boim vs. Quranic Literacy Institute et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum Opinion and Order entered. The parties' Motions in Limine are hereby granted in part and denied in part, as set forth in the attached Order. All motions in limine are resolved. *AK*
(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV - 2004 | |
| | Notified counsel by telephone. | | date docketed | 659 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | 11/24/2004 | |
| | | | date mailed notice | |
| FT /seey | courtroom deputy's initials | 2004 NOV 24 PM 9:04 | FT | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STANLEY BOIM, Individually and as )
Administrator of the Estate of )
DAVID BOIM, deceased, and JOYCE )
BOIM, )
)  No. 00 C 2905
Plaintiffs, )
)
v. )
)  Magistrate Judge
QURANIC LITERACY INSTITUTE, et al., )  Arlander Keys
)
Defendants. )

**MEMORANDUM OPINION AND ORDER**

The purpose of this Memorandum Opinion and Order is to rule on the parties' motions *in limine* and, to the extent possible at this juncture, on the parties' objections to each other's proposed trial exhibits.

<u>Rulings On Motions *In Limine*</u>

NOV 2 9 2004

Motions *in limine* should be granted only if the evidence is clearly not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). If there is any question on the issue, rather than barring the evidence before trial, the Court should reserve ruling on questions of admissibility until they actually arise, in the context of the trial. *See, e.g., Scarboro v. Travelers Ins. Co.*, 91 F.R.D. 21, 22 (E.D. Tenn. 1980); *Hawthorne Partners*, 831 F.Supp. at 1401.

659

A.  Plaintiffs' Motions *in Limine*

At the outset, the plaintiffs have advised the Court that their motion to bar evidence relating to the defendants' affirmative defenses, and their motion to bar defendants from referencing certain financial information are moot. Additionally, the plaintiffs have withdrawn their motion to bar defendants from introducing the testimony of witnesses not previously made available for deposition. The Court will address the remaining motions in limine below.

The Boims first ask the Court to bar witnesses who invoked their Fifth Amendment right from offering substantive testimony at trial. None of those witnesses have given any indication that they intend to testify at trial - to the contrary. But, to the extent necessary, the motion is granted; having invoked the Fifth Amendment to avoid testifying as to these matters, these witnesses have effectively waived their right to testify at trial.

Next, the Boims ask the Court to preclude the defendants from making any arguments based upon the fact that Hamas had not been designated by the United States as a terrorist organization prior to 1991. This fact would bear only on the question of liability, and QLI - the only defendant against whom liability is still an issue - is not alleged to have done anything prior to 1991. The motion is denied as moot.

The Boims next ask the Court to bar irrelevant references to conduct by the Israeli government, army and citizens or to the Palestinian/Israeli dispute, and to bar generalized allegations of prisoner mistreatment by the Israeli authorities. In light of the Court's rulings on summary judgment, these motions are denied as moot. The challenged evidence would seem to have no bearing on the question of QLI's liability, and no bearing on the question of damages.

The Boims next ask the Court to bar Mr. Salah's expert, Avigdor Feldman, from introducing testimony based on knowledge he acquired from Mr. Salah, and from making credibility determinations. Given the Court's summary judgment ruling, Mr. Feldman will not be testifying at trial, and the Court, therefore, denies this motion as moot.

Finally, the Boims have filed a motion seeking an adverse inference instruction against the defendants based on the invocation by witnesses of their Fifth Amendment right against self-incrimination. As the Court has indicated in previous rulings, under the circumstances presented, the witnesses' refusal to answer deposition questions, and refusal to respond to various discovery questions, gives rise to the inference that, if those witnesses had answered the questions posed, and answered them truthfully, the answers would have subjected them to criminal liability. *See, e.g., In re High Fructose Corn Syrup*

*Antitrust Litigation*, 295 F.3d 651, 663 (7th Cir. 2002); *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). The Court will instruct the jury accordingly.

B.  Defendants' Motions *In Limine*

    1.  Holy Land Foundation's Motions *in Limine*

HLF moved *in limine* to exclude (a) documents in the record that were obtained from the Treasury Department; (b) the testimony of the plaintiffs' experts, Reuven Paz and Matthew Levitt; and (c) two FBI memoranda, the Watson Memorandum and one other FBI memorandum. In light of the Court's summary judgment rulings, the motions are denied as moot. The Court will, however, consider the motion to exclude the testimony of Mr. Paz and Mr. Levitt below, because QLI - whose liability was not resolved on summary judgment - adopted HLF's motion on this issue.

    2.  IAP/AMS' Motions *in Limine*

IAP and AMS filed 254 motions *in limine*, all of which, they have advised the Court, were rendered moot by the Court's summary judgment rulings. The Court, therefore, denies as moot all of IAP/AMS' motions *in limine*.

    3.  Mohammed Salah's Motions *in Limine*

Mr. Salah moved to exclude the affidavit of FBI Agent Robert Wright, and he moved to exclude various exhibits relating to Mr. Hinawi, Mr. Himdi and Mr. Arouri. Mr. Salah has advised the

4

Court that, in light of the rulings on summary judgment, the former motion is moot and the latter motion is moot as to the exhibits relating to Mr. Hinawi and Mr. Arouri. Mr. Salah's representations to the contrary notwithstanding, the motion to exclude exhibits relating to Mr. Himdi is also moot; these exhibits, like the exhibits relating to Messrs. Hinawi and Arouri, are relevant only on the questions of Hamas' responsibility for David Boim's murder and Mr. Salah's involvement with Hamas, both of which have been resolved.

Mr. Salah has also moved *in limine* to exclude various documents relating to Hamas – a Hamas web page regarding Khalil Al-Sharif, Hamas website pages containing a "Record of Honor," a press bulletin regarding Hamas, a Jerusalem Post article regarding Khalil Al-Sharif, a printout of a Hamas website, a printout from Al-Najah University website regarding Khalil Al-Sharif, a Hamas website regarding Mahmoud Abu Hanoud, and an interview with Hamas leader Khalid Mishaal. At the summary judgment stage, the plaintiffs submitted these documents, if at all, to establish that Hamas was responsible for the attack that killed David Boim. That issue has already been decided by the Court, and Mr. Salah's motion is, therefore, denied as moot.

Mr. Salah also seeks to exclude the statements he made while he was in Israeli custody and the testimony of Reuven Paz and Matthew Levitt, the plaintiffs' terrorism/Hamas experts. Again,

5

at least as to Mr. Salah, the motions are denied as moot. To the extent Mr. Salah's motions have been adopted by QLI, whose liability remains an open question for trial, the Court will consider them below.

4. QLI's Motions *in Limine*

QLI adopted four of Mr. Salah's motions *in limine*, and one of HLF's motions *in limine*. QLI seeks to exclude (a) the affidavit of FBI Agent Robert Wright; (b) the documents from the Hamas websites; (c) the statements made by Mr. Salah while he was in Israeli custody; (d) the exhibits relating to Messrs. Hinawi, Himdi and Arouri; and (e) the testimony of Reuven Paz and Matthew Levitt.

The motion to exclude the Wright Affidavit is granted as to QLI. As a general rule affidavits are not admissible at trial. *See, e.g., Cox v. National Football League*, 29 F. Supp. 2d 463, 467 (N.D. Ill. 1998); 3 Am Jur. 2d *Affidavits* §19 (2004). And the plaintiffs have not persuaded the Court that Agent Wright's affidavit is somehow exempt from this general rule. Having said this, there is some possibility, as explained below, that the affidavit may come up in the context of the plaintiffs' experts' testimony, despite its inadmissibility.

The motion to exclude certain documents relating to Hamas, the motion to exclude Mr. Salah's confession and statement, and the motion to exclude exhibits relating to Messrs. Hinawi, Himdi

and Arouri would all seem to be moot in light of the Court's summary judgment rulings, which establish that Hamas was responsible for the attack in which David Boim was murdered, and that Mr. Salah provided material support to Hamas. To the extent the plaintiffs seek to introduce this evidence at trial, the Court will consider and resolve objections at that time.

As a practical matter, to the extent the plaintiffs intend to offer evidence about how Hamas operates, and how defendants HLF, IAP/AMS and Mr. Salah furthered and supported Hamas' agenda, they will not only have to demonstrate the relevance of that evidence to the question to be resolved by the jury - i.e., the question of whether QLI provided material support to Hamas, or attempted to or conspired to provide material support to Hamas, they will also have to demonstrate that the relevance outweighs the obvious prejudice to QLI; this evidence is unquestionably inflammatory, and, if, given the Court's prior rulings, it is not related to the issues to be decided by the jury, the Court will not allow the evidence to be admitted.

Turning to QLI's motion to exclude the testimony of Reuven Paz and Matthew Levitt, the Boims have indicated that they intend to offer these witnesses at trial to testify generally about Hamas' operations and structure, and about the defendants' connections with Hamas. At the summary judgment stage, the plaintiffs used declarations from these witnesses to bolster

their contention that Hamas financed its operations via *zakat* committees and charitable organizations, which, in turn, helped to prove that HLF and IAP/AMS, using this very scheme, provided material support to Hamas. But the allegations against QLI are very different; QLI is not alleged to have provided material support to Hamas via *zakat* committees or charitable contributions. Rather, QLI is alleged to have given cover to Mr. Salah, the head of Hamas' military wing, and it is alleged to have funneled money to Hamas through Mr. Salah. Thus, at this point, given that the Court has already determined that Hamas was responsible for David Boim's murder, that HLF and IAP/AMS used the *zakat* scheme to funnel money to Hamas and that Mr. Salah provided material support to Hamas, the testimony Mr. Paz and Mr. Levitt are expected to give may no longer be necessary or even relevant to the issues to be tried. Nevertheless, because the plaintiffs wrote their final pre-trial brief, which describes the expected testimony of these witnesses, before the Court issued its summary judgment rulings, the Court will make a threshold determination outside the presence of the jury, after hearing from the plaintiffs, as to whether the testimony of these witnesses is proper. And if these witnesses do testify, the Court will address and resolve QLI's objections, if any, at that time.

## Objections to Proposed Trial Exhibits

A. <u>Defendants' Objections to Plaintiffs' Exhibits</u>

The plaintiffs provided the Court with three charts regarding exhibits. The first is a list of exhibits that QLI and the plaintiffs jointly propose to admit at trial. To the extent HLF, IAP/AMS and Mr. Salah object to the exhibits on this chart, their objections are waived.

The second chart lists the plaintiffs' proposed trial exhibits, and indicates QLI's objections, if any, to each. QLI first objects, on relevancy grounds, to a bank statement for an account controlled by QLI showing that QLI received money from Yassin Kadi (trial exhibit 30). The plaintiffs have alleged that QLI, through Mr. Kadi, provided Mr. Salah with a monthly stipend, thereby freeing him up to focus on his responsibilities for Hamas. This evidence is relevant to that allegation and will therefore be admitted, assuming the plaintiffs' can satisfy authentication and foundational requirements.

Next, QLI objects to trial exhibit 77, a form entitled "Report of Death of an American Citizen Abroad." According to the plaintiffs' chart, QLI adopted Mr. Salah's objections to this exhibit, but Mr. Salah had no objection to this exhibit. In any event, the document is relevant and admissible.

QLI next objects to trial exhibit 88, which is a loan application completed by Mr. Salah. Assuming the plaintiffs can

satisfy authentication and foundational requirements, the exhibit is relevant and admissible.

QLI next objects to two exhibits taken from Hamas websites: trial exhibit 92 is a page regarding Khalil Al-Sharif; and trial exhibit 93 is a "Record of Honor" to Mahmoud Abu Hanoud. The Court has already determined that Hamas was responsible for the attack that killed David Boim, and so these exhibits would seem to be moot. To the extent the plaintiffs still intend to offer them at trial, the Court will rule on objections, if any, at that time.

QLI next objects to the Arabic and English-language versions of a statement Mr. Salah gave, to people he thought were co-prisoners, while he was in Israeli custody (trial exhibit 176). QLI argues that the documents have not been authenticated, they fail to satisfy Rule 604's requirements for translations, they are unreliable, and any probative value they might have is greatly outweighed by their prejudicial nature. QLI similarly objects to the Arabic and English-language versions of transcripts of interviews Mr. Salah gave to "Nadav," an Israeli Police Officer, while he was in Israeli custody (trial exhibit 208). Given that the Court has already determined that Mr. Salah provided material support to Hamas, the Court questions whether these exhibits have any relevance to the matters to be tried. But to the extent the plaintiffs still intend to offer them at

trial, the Court will consider any objections made by QLI at that time.

Next, QLI objects to a variety of bank documents on the grounds that they have not been properly authenticated and that they are hearsay. Specifically, QLI objects to: trial exhibit 206, which is a checking account summary for Mohammed Salah and his wife, with wire transfer receipts; trial exhibit 209, which is an account summary for Mr. Salah, with copies of various checks; trial exhibit 210, which is a copy of a $3,000 check written by Mr. Salah; trial exhibit 214, which is a wire transfer order from Mrs. Salah; trial exhibit 215, which is a group of Mr. Salah's checking account records; trial exhibit 222, which is an account summary for Mr. and Mrs. Salah; trial exhibit 223, which is a statement of account for Mr. Salah; trial exhibit 224, which is a copy of a check from First Chicago Bank; trial exhibit 226, which is a stack of copies of checks issued by Ahmad Zaki Hammad; and trial exhibit 227, which is a copy of a cashier's check issued to S H Ahmad Zaki Hammad. As the Court explained in its summary judgment rulings, "'[c]ommercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law' are self-authenticating and do not require extrinsic evidence of authenticity"; checks and bank records "have independent legal significance" and are not hearsay. *Boim v. QLI, et al.*, — F.Supp. 2d —, No. 00 C 2905,

11

2004 WL 2554446 (N.D. Ill. Nov. 10, 2004)(quoting *Ament v. Townsend*, No. 98 C 1918, 1998 WL 299806, at *4 (N.D. Ill. May 29, 1998); *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994)). Having said that, the Court questions whether exhibit 214 and the exhibits showing the flow of money from Mousa Abu Marzook to Mr. Salah have any relevance after the summary judgment rulings. If and when the plaintiffs seek to introduce these exhibits at trial, the Court will rule on relevancy, as well as any Rule 403 objections, at that time.

Next, QLI objects to trial exhibit 211, Mr. Salah's answers to plaintiffs' first set of interrogatories, and trial exhibit 218, Mr. Salah's response to plaintiffs' requests to admit. Given that the Court has already determined that Mr. Salah is liable to the plaintiffs, the Court questions the relevance of these documents. Nevertheless, to the extent the plaintiffs still intend to offer these exhibits at trial, the Court will consider and resolve any objections at that time.

Next, QLI objects to a State Department cable concerning Mr. Salah. QLI has not provided the Court with the grounds for its objection, however, so the Court will rule on the objection, if made, at trial.

QLI next objects to trial exhibit 228, a copy of a check issued by Amtrax Holdings Ltd. to Mr. Hammad, on relevancy and hearsay grounds. The objections are overruled; the check is not

hearsay and it is relevant to the plaintiffs' allegation that QLI funneled money to Mr. Salah and, ultimately, to Hamas.

The third chart submitted by the plaintiffs is a list of exhibits that will not be admitted into evidence, but may be used by or referred to by the plaintiffs' experts. With respect to the documents included on this chart, QLI first objects to the affidavit of FBI Agent Robert Wright (trial exhibit 63). As explained above, the affidavit is inadmissible. Nevertheless, if the plaintiffs' experts testify, and if the circumstances warrant, the experts may be able to refer to the affidavit or to statements made therein; the Court will not, however, under any circumstances, allow the plaintiffs to use their experts to make an end-run around the Court's determination that the affidavit is, on its own, inadmissible. *See In re James Wilson Associates*, 965 F.2d 160, 172-73 (7th Cir. 1992)(an expert witness may refer to inadmissible evidence in stating an opinion, but expert testimony may not be used as a vehicle for circumventing the rules of evidence).

QLI next objects to the summary of the trial proceedings of Amjad Hinawi (trial exhibit 91) and to a Jerusalem Post article regarding Khalil Al-Sharif (trial exhibit 96). At the summary judgment stage, the plaintiffs offered these documents to help establish that Hamas was responsible for the attack that killed David Boim. Because the Court has now determined that that was

the case, the Court questions the continued relevance of these documents. To the extent the plaintiffs still intend to offer these exhibits at trial, the Court will rule on objections to them, if any, at that time.

QLI next objects to the handwritten transcript of Israeli police interviews with Salah Arouri, as well as the English-language translation of that transcript (trial exhibit 212). These exhibits would seem to be relevant only on the question of whether Mr. Salah provided material support to Hamas. Given that the Court has already ruled on this issue, the Arouri exhibits would seem to be irrelevant to the matters yet to be tried. To the extent the plaintiffs still intend to offer these exhibits, the Court will rule on objections to them, if any, at that time.

B. <u>Plaintiffs' Objections to QLI's Exhibits</u>

The Boims object to two of QLI's trial exhibits, a group of photographs of QLI's library and a group of books published by QLI. The plaintiffs' relevancy and hearsay objections are overruled; the exhibits are not hearsay, and they are relevant to the extent they support QLI's claim that it had a legitimate purpose, beyond the purpose alleged by the plaintiffs. Nor are the exhibits hearsay.

Conclusion

As set forth above, the Court grants plaintiffs' motion to bar witnesses who invoked their Fifth Amendment rights from

offering substantive testimony at trial [#361]; and plaintiffs' motion for an adverse inference instruction against the defendants who invoked their Fifth Amendment rights [#362, #626].

The Court denies as moot plaintiffs' motion to bar evidence relating to affirmative defenses [#365, #623]; plaintiffs' motion to bar references to financial information [#363, #627]; plaintiffs' motion regarding Hamas' designation as a terrorist organization [#359]; plaintiffs' motion to bar references to conduct by the GOI and others [#364, #622]; plaintiffs' motion to bar allegations of prisoner mistreatment by the GOI [#357]; plaintiffs' motion to bar certain aspects of Mr. Feldman's testimony [#360, #625]; all of HLF's motions *in limine* [#353, #354, #355]; all of IAP/AMS' motions *in limine* [#366 - #620]; and all of Mr. Salah's motions *in limine* [#649].

QLI's motions in limine [#628] are granted with respect to the affidavit of FBI Agent Robert Wright. QLI's motions are otherwise denied as moot, except to the extent the Court has indicated that it will reserve ruling until the trial.

Plaintiffs' motion to bar defendants from introducing the testimony of witnesses not previously made available for deposition [#358, #624] is withdrawn.

In closing, the Court notes that the denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial; in some cases, the Court

15

has denied a motion because, until it views the evidence in the context of the trial, the Court cannot determine whether the subject evidence should be excluded or admitted. *See Hawthorne Partners*, 831 F.Supp. at 1401. Thus, the Court will entertain objections on individual proffers as they arise at trial, even if the proffer technically falls within the scope of a motion *in limine* that was denied.

Date: November 24, 2004

                ENTER:

                _/s/ Arlander Keys_
                ARLANDER KEYS
                United States Magistrate Judge