IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, et al, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil No. 00-cv-02905 ) ) |
| QURANIC LITERACY INSTITUTE, et al. Defendants. | ) **Hon. Gary Feinerman** ) ) ) ) |

**MEMORANDUM IN SUPPORT OF MOTION FOR JOINDER OF NON-PARTIES
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 25(c)**

It is well established that Federal Rule of Civil Procedure 25(c) may be used in a supplementary, post-judgment proceedings to assert alter-ego or successor liability against a non-party to a judgment and, ultimately, to enforce the judgment against the non-party if alter ego or successor status is established. *See, e.g., Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 23 (7th Cir. 1977); *Rodriguez-Miranda v. Benin*, 829 F.3d 29, 43 (1st Cir. 2016). A proceeding to effectuate a Rule 25(c) joinder or substitution is initiated by filing a motion to join or substitute and providing notice of hearing to the parties. Fed. R. Civ. P. 25(a)(3)(c). This motion seeks to initiate such a proceeding and ultimately to enforce the unpaid portion of the judgment entered in the above-captioned matter against two entities and three individuals who are alter egos and successors of the judgment debtors.

These are not ordinary judgment debtors, and this is not an ordinary commercial case. The defendants in this action were held liable in this Court under the civil remedies provisions of the Anti-Terrorist Act ("ATA"), 18 U.S.C. §2333, for providing material support to a foreign terrorist group that murdered David Boim, an American teenager. As discussed below—and as will be

demonstrated at the hearing on this motion—the judgment debtors here and their individual leaders have deliberately created and hidden behind new legal entities, to obscure their identity and avoid paying the judgment—thereby nullifying the critical purposes of the ATA.

The plaintiffs, Stanley and Joyce Boim, originally filed the above-captioned action (the "*Boim* Action") under Section 2333 of the ATA after their son, David, was murdered by two agents of the international terrorist organization, Hamas. In 2004, this Court entered judgment (the "*Boim* Judgment") in the amount of $156 million in favor of the plaintiffs against certain individuals and organizations (the "*Boim* Defendants") who provided material support to Hamas. However, when time came to pay the *Boim* Judgment, two of the principal *Boim* Defendants claimed to be out of business with few assets. A third had its assets seized by the government after it, together with its leaders, was convicted of terrorist activities. As a result, the Boims have recovered only a small percentage of the total amount of the *Boim* Judgment.

Seemingly, the *Boim* Action brought an end to the defendant organizations. But that was not the case. Prominent *Boim* Defendants are in business today through their successors and alter egos: American Muslims for Palestine and The Americans for Justice in Palestine Educational Foundation (hereinafter collectively referred to as "AMP").[1] AMP was established by former leaders of several *Boim* Defendant entities—including Rafeeq Jaber—to continue the same enterprise, while avoiding the burden and stigma of the *Boim* Judgment. AMP continues to be run today by former leaders of the *Boim* Defendant entities; it is headquartered in the same neighborhood; it continues the same enterprise, mission, and activities; and it appears to have received assets from the *Boim* Defendants. Jaber exercised control of the *Boim* entities in 1998,

---

[1] American Muslims for Palestine was incorporated on July 28, 2006, in California. In 2009, its leaders incorporated Americans for Justice in Palestine, which later became American Muslims for Palestine's operating entity and now does business as American Muslims for Palestine.

2

and, along with other former IAP leaders, continued to lead AMP. As alter egos and successors of *Boim* Defendants, AMP and Jaber are liable for the unpaid portion of the *Boim* Judgment.

Pursuant to Rule 25(a)(3)(c), this motion seeks to commence Rule 25(c) proceedings to effectuate the joinder of AMP and Jaber because they are alter egos and/or successors of the *Boim* Defendants. Plaintiffs request that the Court: (i) permit appropriate discovery in connection with these Rule 25(c) proceedings; (ii) set a hearing to determine following appropriate discovery whether AMP and Jaber are liable as alter-egos and/or successors of one or more of the *Boim* Defendants (or permit submission of evidence through an appropriate motion in the event that there are no material disputed issues of fact); (iii) join AMP and Jaber as judgment debtors if the Court determines that they are alter–egos and/or successors; and (iv) order that the *Boim* Judgment is jointly and severally enforceable against AMP and Jaber.

## I. BACKGROUND

### A. The Initial *Boim* Action and *Boim* Defendants

In 1996, Stanley and Joyce Boim's seventeen-year old son David was murdered by a Hamas gunman while standing with classmates on their way to Jerusalem to attend a review class for their matriculation exams. The Boims filed suit in 2000 in this Court under the civil remedies provision of the ATA. The *Boim* Defendants were individuals and organizations in the United States who provided material support to Hamas in violation of 18 U.S.C. § 2339A, including, *inter alia*, the Holy Land Foundation for Relief and Development ("HLF"), the American Muslim Society ("AMS"), AMS's alter egos operating under the name Islamic Association for Palestine (hereinafter, AMS and the Islamic Association for Palestine will be referred to collectively as "IAP"), and the United Association for Studies and Research ("UASR"). On November 10, 2004, this Court entered summary judgment in favor of the Boims, *Boim v. Quranic Literacy Institute*,

3

340 F. Supp. 2d 885 (N.D. Ill. 2004), and on December 8, 2004, the jury awarded damages of $52 million, which were trebled to $156 million pursuant to the ATA.

In both the trial and appellate courts, IAP and HLF claimed to be charitable and educational institutions promoting the welfare of Palestinians and educating the American public. The Court of Appeals for the Seventh Circuit, sitting *en banc*, rejected that assertion in a landmark ruling governing civil liability under the ATA, holding that a defendant who provides material support to a terrorist organization such as Hamas—even to its social or charitable wing—with knowledge that the organization engages in terrorism is, as a matter of law, a cause of the organization's terrorist activity. *Boim v. Holy Land Found.*, 549 F.3d 685, 698-99 (7th Cir. 2008) (*en banc*).

Final judgements were ultimately entered against, *inter alia*, *Boim* Defendants HLF, IAP, and UASR. But as noted above, IAP claimed to be defunct and without funds; HLF and its principals were convicted and their funds seized. As a result, the Boims have only collected a small percentage of their $156 million judgment

### B. American Muslims for Palestine and Americans for Justice in Palestine Are Established as Alter Egos and/or Successors to Continue the Business of the *Boim* Defendants

At the hearing on this motion, plaintiffs will establish that AMP and Jaber are alter egos and successors of the *Boim* Defendants. AMP was established in Palos Hills, Illinois in 2005—shortly after the *Boim* Judgment—by activists involved in IAP and a successor entity to HLF, KindHearts. During an investigation of KindHearts, individuals affiliated with KindHearts and IAP opened the national office for AMP in 2008 in Palos Hills, just down the street from the former offices of IAP. These purportedly new entities were created by former IAP leaders and supporters, including Jaber—who had previously managed and controlled IAP. In 2009, AMP leaders established Americans for Justice in Palestine as a tax-exempt organization run by former leaders

4

of IAP, which acts as the financial supporter of AMP, receives donations on its behalf, and eventually became AMP's operating entity.

The current management and donors of AMP are substantially the same as the management and donors of their predecessors, HLF and IAP. For example, the Mosque Foundation in Bridgeview, Illinois—the charitable arm of the Bridgeview Mosque—is a significant supporter and funder of AMP just as it was for the *Boim* Defendants. The Mosque Foundation has a history of donating and directing money to terrorist organizations including Hamas and al-Qaeda. The Mosque Foundation's leader, Sheikh Jamal Said, regularly spoke at IAP events and has been a frequent speaker at AMP conferences and fundraisers. Leaders of AMP hold prominent positions in the Mosque Foundation and its affiliates.

Other individuals who played important leadership roles in *Boim* Defendant entities have gone on to play key roles in AMP.

- Jaber is especially prominent, both in the predecessor *Boim* Defendant entities, and in AMP. Jaber oversaw IAP's dissolution following the Boim Judgment and stifled the Boims' collection efforts by failing to monetize valuable IAP assets, including IAP's newspaper. Jaber then turned around and immediately became involved with AMP. For example, Jaber was a prominent speaker at its first convention, giving the new organization credibility and signaling to supporters that IAP was still alive but with a new name. Jaber thus knew that IAP had reformed as AMP and was continuing to raise funds, but he concealed this information from the Boims. Jaber was also an organizer of Americans for Justice in Palestine and prepares its tax forms. He is President of the Board of Directors of the Bridgeview Mosque. His business, Jaber Financial Services, is an AMP donor, he signed a petition in 2015

5

- as an AMP representative and was involved in board-level decisions for AMP.

- Abdelbasset Hamayel was for many years identified by AMP as its Executive Director. He was AJP's registered agent and head of the Mosque Foundation Community Center. Hamayel was the Director and Secretary General of IAP and the former Wisconsin and Illinois representative for KindHearts.

- Osama Abuirshaid is an AMP board member and its Executive Director. Abuirshaid was the editor of IAP's newspaper, *Al-Zaytounah*, operating from Washington, D.C. According to Jaber, Abuirshaid was "from IAP National which is … Chicago [and] in charge of everything from A to Z in the paper, what comes on the paper and what goes into the paper." Abuirshaid's salary was paid by IAP. Abuirshaid has published a similar newspaper, *Al-Meezan,* from Virginia. Among the regular features in *Al- Meezan* is an advertisement for a blog written from prison by Shukri abu Baker, the former President of HLF.

IAP could not and did not operate independently from Jaber and other former IAP leaders. They were the heart of IAP and they directed and controlled the entity. IAP operated to carry out their agenda in accordance with their directives.

AMP has continued the *Boim* Defendants' activities and purposes. For example, IAP held major annual conferences featuring prominent speakers identified with Hamas, including leaders and fighters from Gaza and the West Bank. After IAP purportedly went out of business, beginning in 2006, the IAP Annual Conference became the AMP Annual Conference. The target audience, content, management, speakers, and message have remained the same. Speakers have included Hatem Bazian, Rafeeq Jaber, Kifah Mustapha, Abdelbasset Hamayel, and Osama Abuirshaid, each of which had been featured at prior IAP events.

In short, IAP and HLF were replaced by AMP to permit the same ongoing enterprise to continue free and clear of the burden of the *Boim* Judgment and the stigma of liability for aiding and abetting the murder of an American teenager. AMP's establishment in 2005 coincided almost exactly with the *Boim* Judgment. AMP *is* IAP and HLF but just by a different name, and AMP and Jaber are alter egos of IAP and HLF—which Jaber controlled in 1998 and whose mission and purpose he and other former IAP leaders have continued through AMP. AMP and Jaber are therefore liable for the *Boim* Judgment.

### C. Plaintiffs' Enforcement Proceeding and Declaratory Judgment Action

Plaintiffs are initiating supplementary enforcement proceedings in this action. Plaintiffs are bringing this motion within those enforcement proceedings. As judgment creditors, plaintiffs may "obtain discovery from any person— including the judgment debtor—as provided in [the Federal Rules of Civil Procedure] or by the procedure of [Illinois]." Fed. R. Civ. P. 69(b). *See also Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 552 (7th Cir. 2021) ("The most straightforward path for enforcing a judgment is a continuation of legal proceedings in the same court (and often before the same judge) that entered the judgment.")

Plaintiffs concurrently filed in this Court a separate declaratory judgment action (the "Declaratory Action") under a new caption, seeking (among other things) a declaration that AMP and Jaber are successors and/or alter egos of the *Boim* Defendants and are therefore liable for the *Boim* Judgment.

### II. ARGUMENT

**A. Plaintiffs Will Demonstrate that AMP and Jaber Are Alter Egos and/or Successors of Certain of the *Boim* Defendants.**

Plaintiffs will demonstrate at the hearing on this motion (or in appropriate briefs if material issues of fact are not disputed) that AMP and Jaber are liable for the unpaid portion of the *Boim*

7

Judgment as alter egos and/or successors of one or more of the *Boim* Defendants who are judgment debtors in this matter. Both the alter ego and the successor liability doctrines are applicable in the international terrorism and not-for-profit contexts and provide bases for joinder of AMP and Jaber here.

Federal courts have broadly applied the alter ego doctrine to individuals and organizations that engage in or support terrorism. Indeed, in an appeal concerning the related Declaratory Judgment Action, the Seventh Circuit noted that the alter ego doctrine is not rigid and must account for the specific context in which it is being applied. *Boim v. American Muslims for Palestine, et al.,* 9 F.4th 545, 559 (7th Cir. 2021) ("But the alter ego doctrine is not rigid and must account for the context in which the doctrine is being applied—here, to terrorism financing organizations.") Recognizing that terrorist organizations differ from owned, for-profit entities, these courts have eschewed typical "factors" applied to alter ego and veil piercing claims in the for-profit context in favor of an analysis focused on the "the broader equitable principle" recognized in *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629-630 (1983) ("*BPECE*"), under which "the doctrine of corporate entity, recognized generally and for most purposes, will not be regarded when to do so would work fraud or injustice" or when it is "interposed to defeat legislative policies." *Id*. This analysis looks at *dominion and control*—often in the framework of agency law—and whether an entity's independence is in form only. *Id*. at 629.

For example, in its appeal of its criminal conviction, *Boim* Defendant HLF claimed that it was error to have been represented at trial by the same counsel as its president, Shukri Abu Baker. The Fifth Circuit sent the question back to the trial court for an evidentiary hearing, and the trial court concluded there was no space between Holy Land and its principals:

> The evidence clearly established that HLF could not and did not operate independently from Baker, Elashi and El-Mezain. Baker,

8

> Elashi and El- Mezain were the heart of HLF and they directed and controlled HLF throughout its lifetime. HLF was created and operated to carry out their agenda in accordance with their directives. Any independence was in form only. In such a situation the court may disregard the legal fiction of the corporate entity. The law recognizes there is no practical distinction between the acts of the individuals and the acts of the corporation in cases like this. Courts may also disregard the corporate existence when the corporate entity is used as a 'cloak for fraud or illegality or to work an injustice.'

*United States v. Holy Land Foundation*, No. 3:04-CR-0240-P, Dkt # 1447, page 15 (N.D. Tex. May 24, 2010).

Courts have employed the same approach in civil damages cases. In *In re 650 Fifth Ave. & Related Props.*, 881 F. Supp. 2d 533, 548-552 (S.D.N.Y. 2012), the victims of a terrorist bombing of Marine Corps barracks in Beirut sought to enforce money judgments through a turn-over order against a New York property owned by entities alleged to be alter egos of the Iranian government. In examining the claim under the Foreign Sovereign Immunities Act, the court held that the entities were alter egos of Iran. Rather than looking to state law, *650 Fifth Avenue* relied on *BPECE* and examined *control* and whether the entities were in effect "agents" of the Iranian government. After finding that the defendant foundation's charitable giving was driven by Iran, the management of the building was overseen by Iran, and seized documents showed that the defendants could not act without authorization from Tehran, the court found that the defendants were "at least agents" and therefore alter egos.

Similarly, in In *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414 (E.D.N.Y. 2013), the court examined whether certain charities were alter egos of Hamas for purposes of the plaintiffs' §2333(a) claims. The court adopted the "alias" standard set forth by the current Chief Justice of the United States Roberts in *Nat'l Council of Resistance of Iran v. Dep't of State*, 373 F.3d 152, 157–58 (D.C. Cir. 2004), that when "one entity so dominates and controls another that

9

they must be considered principal and agent, it is appropriate, under AEDPA, to look past their separate and juridical identities and to treat them as aliases." *Strauss*, 925 F. Supp. 2d at 435. The court considered traditional veil-piercing factors—i.e. "whether the organizations share leadership, whether they commingle finances, publications, offices, etc., and whether one operates as a division of the other"—but ultimately rejected defendant's assertion that the plaintiffs must also satisfy these factors, holding "[w]hile these factors may be similar to the factors [used in this case], the court questions whether legitimate corporations are sufficiently analogous to terrorist groups such that every corporate veil piercing factor applies here." *Id*. at 435 n.14. Courts in numerous other cases have adopted the same approach. *See, e.g., Nat'l Council of Resistance of Iran*, 373 F.3d at 157–58; *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 432 (E.D.N.Y. 2009); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 555 (E.D.N.Y. 2012); *Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287, 334 (E.D.N.Y. 2015).[2]

Federal courts have also extended the dominion-and-control concept to hold that *non-contemporaneous* entities are alter egos when they are managed or controlled by the same people and are in reality one enterprise. For instance, in *Sanchez v. Global Parking Management, Inc.*, No. 14–cv–04611, 2015 WL 4429024, at *1 (N.D. Ill. July 20, 2015), this Court held that common management between two seemingly separate successive companies was "relevant to determine whether two seemingly independent businesses are really one enterprise" for purposes of alter ego liability for Fair Labor Standards Act violations. *Id*. at *3. Likewise, courts have commonly found alter ego liability in the ERISA context for successive employers where there is "substantially

---

[2] Illinois state courts have similarly treated alter ego and "veil piercing" as equitable doctrines that can appropriately be extended to the not-for-profit context, even where the traditional for-profit factors do not fit. *See, e.g., Macaluso v. Jenkins*, 95 Ill. App. 3d 461, 465 (2d Dist. 1981) (organization's "status as a not for profit corporation in and of itself should not bar a court from applying the equitable remedy of piercing the corporate veil"); *see also Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 501 (2d Dist. 2005); *Buckley v. Abuzir*, 2014 IL App (1st) 130469, ¶ 31.

10

identical management" and identical "business purpose." *See, e.g., Laborers' Pension Fund v. Green Demolition Contractors, Inc.*, 2016 WL 74682, at *2 (N.D. Ill. Jan. 7, 2016) (quoting *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 433 (7th Cir. 1998)).

Likewise, courts have readily extended the "successor" liability paradigm to not-for- profit entities, even where they do not fit the standards usually applied in the for-profit, corporate context. *See, e.g., Chao v. Int'l Bhd. of Indus. Workers Health & Welfare Fund*, 97 F. Supp. 3d 268, 274 (E.D.N.Y. 2015) ("The Court notes that the standard governing successor liability in the corporate context, although not a perfect fit, is more appropriate for determining successor liability between two non-profit employee benefit trusts"); *Hankinson v. King*, 117 F. Supp. 3d 1068, 1074 (D. Minn. 2015) (courts have gone so far as to either (i) reinterpret the 'continuity of shareholders' requirement as a 'continuity of ownership' requirement because non-profits have no shareholders, or (ii) simply ignore this prong as inapplicable or irrelevant when considering this exception for non-profits); *Ring v. The Elizabeth Foundation for the Arts*, Index No. 113849/2011, 2014 WL 5908429, at *5 (N.Y. Sup. Nov. 12, 2014) ("court recognized that, because both entities were not-for-profits, they had no owners or shareholders. Therefore, it looked to other indicia of control instead of considering ownership, per se").

Thus, there is ample authority for extending alter ego and successor liability to the terrorism and not-for-profit context, even where traditional factors might not otherwise apply. As outlined above, Plaintiffs will demonstrate that Jaber exercised dominion and control over one or more of the *Boim* Defendant entities and along with other IAP leaders continued to carry on the same enterprise in the wake of efforts to enforce the *Boim* Judgment. Likewise, Plaintiffs will show that AMP is simply a reincarnation of the *Boim* Defendants, created at the time of the *Boim* Judgment to continue the *Boim* Defendants' work without the burden of paying the *Boim* Judgment and to

11

portray a new public face. This proof will be sufficient to demonstrate that AMP and Jaber are (1) alter egos and successors of *Boim* Defendants IAP and HLF, and (2) the same entity or person as these *Boim* Defendants and are liable to Plaintiffs under 18 U.S.C. § 2333(a) for the unpaid portion of the *Boim* Judgement.

**B.    Rule 25(c) Is a Proper Procedural Mechanism to Join Alter Egos and Successors in a Supplementary Enforcement Proceeding.**

Rule of Civil Procedure 25(c) permits substitution or joinder of a transferee where "an interest" has been transferred:

> If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

Fed. R. Civ. P. 25(c). A proceeding to effectuate a Rule 25(c) joinder or substitution is initiated, as Plaintiffs have done here, by filing a motion to substitute and providing notice of hearing to parties as provided in Rule 5 and nonparties as provided in Rule 4. Fed. R. Civ. P. 25(a)(3)(c).

Rule 25(c) may be used as a basis to assert alter ego and successor claims against non-parties in post-judgment supplementary enforcement proceedings. *See, e.g., Panther Pumps*, 566 F.2d at 23-24 (motion to add successor in interest as party in post-judgment contempt proceeding); *Chicago Dist. Council*, 1997 WL 12794, at *1 (Rule 25(c) used to assert ERISA successor liability claim); *Rodriguez-Miranda v. Benin*, 829 F.3d 29, 43 (1st Cir. 2016) (courts have "sanctioned the use of Rule 25(c) to join parties as alter egos and hold them liable for the full judgment"). In the leading Seventh Circuit case, *Panther Pumps*, the court held that the "charge" in a motion to substitute is that the party to be substituted "is the successor in interest of the judgment debtor and, therefore, liable on the judgment." *Panther Pumps*, 566 F.2d at 24. The court evaluated the Rule 25(c) motion based on the standards for successor liability, finding that the successor in that case was a "mere continuation" of the judgment debtor and that the transfer was a "fraudulent effort to

escape liability." *Id.* at 25-26; *see also Chicago Dist. Council of Carpenters Pension Fund v. Artistry Woodworking, Inc.*, No. 92 C 2069, 1997 WL 12794, at *1 (N.D. Ill. Jan. 10, 1997) (motion to substitute granted and judgment entered against successor based on meeting ERISA test for successor liability); *Select Creations, Inc. v. Paliafito Am., Inc.*, 852 F. Supp. 740 (E.D. Wisc. 1994) (Rule 25(c) motion based on transfer of toy business to successor, which was set up to avoid liability; alter ego of successor also substituted).

Rule 25(c) proceedings are not limited to recovery of transferred assets. In *Rodriguez-Miranda v. Benin*, 829 F.3d 29 (1st Cir. 2016), the First Circuit addressed the question of whether the scope of imposed liability based on a Rule 25(c) substitution would be limited to the amount of the transferred assets—i.e. "reaching the 'interest only'"—or whether the successor/alter ego would be liable for the whole judgment. 829 F.3d at 42. After noting that the courts in *Panther Pumps*, *Minnesota Min. & Mfg. Co.* and *Explosives Corp. of Am. v. Garlam Enters Corp.*, 817 F.2d 894 (1st Cir. 1987), all permitted liability for the full amount of the judgment, the First Circuit held that the district court properly joined two parties as successors in interest and alter egos and made them liable for the whole judgment:

> [W]hen we have never expressly limited Rule 25(c) joinder to the amount of the transferred assets, and other circuits, especially on such similar facts, have sanctioned the use of Rule 25(c) to join parties as alter egos and hold them liable for the full judgment, "any error cannot be plain or obvious."

*Id.* at 43. Under the First Circuit's reasoning—based on cases in this Circuit and elsewhere—this Rule 25(c) motion is a proper basis to impose liability for the entire unpaid amount of the *Boim* Judgment on the *Boim* Defendants' successors and alter egos.

C. **Following Discovery and an Appropriate Hearing, the Court Should Enforce the Unsatisfied Portion of the *Boim* Judgment against AMP and Jaber.**

Following appropriate discovery and a hearing (or briefing if there are no disputed issues

13

of material fact) during which Plaintiffs will demonstrate that AMP and Jaber are alter egos and/or successors of one or more *Boim* Defendants, Plaintiffs request that this Court join AMP and Jaber as judgment debtors and enforce the *Boim* Judgment against them, jointly and severally. This relief is both permitted under Rule 25(c) and equitable under the circumstances.

Indeed, there is a strong public interest in preventing organizations that have provided financial support to terrorist groups from escaping liability by merely dissolving legal entities and replacing them with new legal entities. As explained above, the Anti-Terrorism Act provides a comprehensive scheme of criminal and civil liability aimed at eradicating support for international terrorism, including material support provisions described by the Supreme Court as a "preventive measure—it criminalizes not terrorist attacks themselves, but aid that makes the attacks more likely to occur." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35 (2010). Noting that terrorism is *sui generis*, Judge Posner, on behalf of the *en banc* panel in the appeal of the *Boim* Action, fashioned a remedy against even small donors to known terrorist organizations in order to sustain the underlying purpose of the ATA. *See Boim v. Holy Land Foundation*, 549 F.3d 685, 698 (7th Cir. 2004) (*en banc*).

Allowing AMP and Jaber escape liability based on the fiction of their separate legal existence would enable the *Boim* Defendants to shield and transfer their assets and continue with their same enterprise and mission—despite having been held to be material supporters of international terrorism. The effective enforcement mechanisms of the ATA will be thwarted if "fronts" for people and enterprises who support terrorism can avoid liability merely by morphing into new entities not subject to prior ATA judgments. Moreover, the injustice to the victims in this case, and to other victims of international terrorism financed by the *Boim* Defendants' support, demands that the *Boim* Defendants and Jaber not be allowed to escape liability simply by creating

14

two new legal entities that are in every way identical except for name, and shifting their ongoing mission, operations, activities, and assets to those purported new entities.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion and (i) permit appropriate discovery in connection with these Rule 25(c) proceedings; (ii) set a hearing to determine following appropriate discovery whether AMP and the Jaber are liable as alter-egos and/or successors of one or more of the *Boim* Defendants (or permit submission of evidence through an appropriate motion in the event that there are no material disputed issues of fact); (iii) join AMP and Jaber as judgment debtors if the Court determines that they are alter–egos and/or successors; (iv) order that the *Boim* Judgment is jointly and severally enforceable against AMP and Jaber; and (v) grant such further relief as the Court deems just and appropriate.

Dated: July 21, 2022

Respectfully submitted,

*s/ Seth H. Corthell*
Daniel I. Schlessinger
Seth H. Corthell
Jaszczuk P.C.
30 South Wacker Dr., Suite 2200
Chicago, IL 60606
(312) 442-0401
dschlessinger@jaszczuk.com
scorthell@jaszczuk.com

*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

Of Counsel
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202) 828-1000

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on July 21, 2022 he caused the foregoing MEMORANDUM IN SUPPORT OF MOTION FOR JOINDER OF NON-PARTIES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 25 (c) to be served upon (i) Islamic Association for Palestine ("IAP"); (ii) American Muslim Society ("AMS"); (iii) American Muslims for Palestine ("AMP"); (iv) Americans for Justice in Palestine Educational Foundation ("AJP"); and (v) Rafeeq Jaber, by (1) electronically filing with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system, and thereby serving by e-mail notification upon counsel for all parties of record and (2) U.S. Mail, postage pre-paid, to the following persons at the following addresses:

| | |
|---|---|
| AMS | Rafeeq Jaber<br>Last Known Registered Agent for AMS<br>Jaber Financial Services<br>10661 S Roberts Rd, Ste 200<br>Palos Hills, IL 60465-1988<br><br>Rafeeq Jaber<br>9748 Meade Ave<br>Oak Lawn, IL 60453 |
| IAP | Mohammed Lafi<br>Last Known Registered Agent for IAP<br>401 S. Sherman #219<br>Richardson, TX 75081 |
| AMP | Abdelbasset Hamayel<br>Registered Agent for AMP<br>10101 S Roberts Rd<br>Palos Hills, IL 60465<br><br>American Muslims for Palestine<br>10063 S. 76th Ave<br>Bridgeview, IL 60455 |

| | |
|---|---|
| AJP | Abdelbasset Hamayel<br>Books and Record Keeper for AJP<br>10101 S Roberts Rd<br>Palos Hills, IL 60465<br><br>Americans for Justice in Palestine Educational Foundation<br>10063 S. 76th Ave<br>Bridgeview, IL 60455 |
| Rafeeq Jaber | Jaber Financial Services<br>10661 S Roberts Rd, Ste 200<br>Palos Hills, IL 60465-1988<br><br>9748 Meade Ave<br>Oak Lawn, IL 60453 |

*s/ Seth H. Corthell*